DECISION
{¶ 1} Relator, Grimes Aerospace Co., Inc., commenced this original action requesting a writ of mandamus that orders respondent Industrial Commission of Ohio to vacate its order granting permanent total disability compensation to respondent Wesley Miller and to find that claimant is not entitled to that compensation.
 {¶ 2} Pursuant to Civ.R. 53 and Section (M), Loc.R. 12 of the Tenth Appellate District, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) In her decision the magistrate concluded that: (1) although claimant's application for permanent total disability compensation was not supported with medical evidence indicating claimant was not capable of sustained remunerative employment, the medical report submitted, in combination with the non-medical factors, allowed the commission to conclude claimant was permanently and totally disabled; (2) the commission did not grant permanent total disability compensation based solely or primarily on claimant's age; (3) the commission did not abuse its discretion in relying on the vocational report of Gearhart/Kahler; (4) the commission did not make its own medical conclusions or disregard the medical evidence; (5) the claimant did not voluntarily abandon the workforce; (6) the commission did not abuse its discretion in rejecting relator's contention that claimant's non-allowed conditions were the proximate cause of his inability to work; and (7) relator suffered no prejudice from the magistrate's determination that the estate of claimant remained a party to the proceedings. Accordingly, the magistrate determined the requested writ should be denied.
 {¶ 3} Relator filed the following objections to the magistrate's conclusions of law:
[1.] RESPONDENT'S INITIAL PROCESSING OF THE APPLICATION FOR PERMANENT TOTAL DISABILITY WAS CONTRARY TO LAW AND THEREFORE AN ABUSE OF DISCRETION.
[2.] RESPONDENT ABUSED ITS DISCRETION IN RELYING UPON THE CLAIMANT'S ADVANCED AGE, WHICH WAS THE SOLE CAUSE OR PRIMARY OBSTACLE TO RE-EMPLOYMENT.
[3.] RESPONDENT ABUSED ITS DISCRETION IN RELYING UPON THE VACATIONAL ASSESSMENT REPORT OF DR. KAHLER.
[4.] RESPONDENT ABUSED ITS DISCRETION IN MAKING ITS OWN MEDICAL CONCLUSIONS/PRESUMPTIONS AND IN DISREGARDING THE OVERWHELMINGLY CONSISTENT THREE MEDICAL REPORTS.
[5.] RESPONDENT ABUSED ITS DISCRETION IN AWARDING [PERMANENT TOTAL DISABILITY] TO MR. MILLER WHO VOLUNTARILY ABANDONED AND RETIRED FROM THE WORK FORCE.
[6.] RESPONDENT ABUSED ITS DISCRETION IN REJECTING RELATOR'S ARGUMENT THAT MR. MILLER'S NON-ALLOWED CONDITIONS WERE THE PROXIMATE CAUSE OF HIS ALLEGED INABILITY TO WORK.
[7.] THE ESTATE OF MR. MILLER, IF IT WERE ESTABLISHED, WOULD NOT HAVE ANY LEGAL INTEREST IN THE OUTCOME OF THIS PROCEEDING.
 {¶ 4} Relator's first objection continues to maintain the medical evidence supporting claimant's application for permanent total disability compensation is lacking because the medical reports did not opine that claimant was incapable of sustained remunerative employment. The magistrate properly concluded that the medical evidence in support of claimant's application need not opine that he is incapable of sustained remunerative employment. Rather, because the medical evidence here indicates an ability to perform sedentary work, an application of a non-medical factor determines whether the claimant is incapable of sustained remunerative employment and permanently and totally disabled.
 {¶ 5} Moreover, to the extent relator continues to contend Dr. Atwell's undated report may not be considered, we note the magistrate's observation that, although relator challenged Dr. Atwell's report on other grounds, the issue of timeliness was not raised before the commission. See State ex rel. Quarto Mining Co. v. Foreman (1997),79 Ohio St.3d 78 (noting that issues not raised in an administrative hearing cannot be raised, and are not reviewable, in mandamus). Relator's contention that the undated report rises to the level of plain error is unpersuasive in light of relator's admission before the commission that Dr. Atwell was claimant's then current treating physician.
 {¶ 6} Relator's second objection contends the commission abused its discretion in relying on claimant's advanced age as the sole cause for his inability to be reemployed. The magistrate adequately addressed relator's contentions, reiterated in this objection, in quoting from the commission's order. The quoted section refers not only to claimant's age, but to his past jobs and the resulting lack of transferable marketable skills, and to the physical restrictions inherent in claimant's use of oxygen with the accompanying oxygen tank.
 {¶ 7} Relator's third objection contends the commission erred in relying on the vocational assessment report of Dr. Kahler. Relator continues to assert that the report is deficient in that it fails to acknowledge the medical report of Dr. Martin. While relator contends the magistrate failed to address the issue, the magistrate adequately addressed it in noting the commission conducted its own analysis of the non-medical factors and determined the weight to be given to the Gearhart/Kahler report. As a result, any error in the report was obviated through the commission's analysis.
 {¶ 8} Relator's fourth objection contends the commission drew its own medical conclusions and disregarded the three medical reports. As the magistrate pointed out, however, the staff hearing officer did nothing more than note observations of claimant during the hearing. The staff hearing officer did not purport to draw medical conclusions, but specifically relied on the medical reports noted in the order. Based on those medical reports, as well as the staff hearing officer's analysis of the non-medical disability factors, the staff hearing officer could conclude claimant is permanently and totally disabled.
 {¶ 9} Relator's fifth objection contends the commission abused its discretion in awarding compensation when claimant voluntarily abandoned the work force through retirement. While relator acknowledges Ohio Supreme Court case law holding to the contrary, relator suggests we carve out an exception under the circumstances of this case. We decline the invitation, as the Supreme Court cases noted in the magistrate's decision support the conclusion that claimant did not voluntarily abandon his employment when he retired from the workforce in 1984. See State ex rel.Liposchak v. Indus. Comm. (2000), 90 Ohio St.3d 276; State ex rel.Reliance Elec. Co. v. Wright (2001), 92 Ohio St.3d 109.
 {¶ 10} Relator sixth objection asserts the commission wrongly rejected relator's argument that claimant's non-allowed conditions were the proximate cause of his inability to work. For the reasons set forth in the magistrate's decision, relator's contentions are unpersuasive. As the magistrate noted in referring to the medical reports, "there is nothing in those reports to indicate that the doctors relied upon anything other than the allowed conditions in determining that the claimant was capable of performing some sedentary activities." (Magistrate's Decision, ¶ 42.)
 {¶ 11} Lastly, relator's seventh objection contends claimant's estate had no legal interest in the outcome of the proceeding and should have been dismissed as a party. The magistrate adequately addressed relator's contention, and noted that "the record was not clear whether or not [permanent total disability] compensation had been paid up until claimant's death. Clearly, by law, [permanent total disability] compensation is payable from the date it is granted until the death of the claimant. Because relator did not submit any documentation that [permanent total disability] compensation had been paid up until the date of claimant's death, this magistrate finds that her order refusing to dismiss claimant and/or claimant's estate as parties was not error." (Magistrate's Decision, ¶ 43.) Not only do we agree with the magistrate's conclusion, but we further discern no prejudice to relator in the magistrate's decision to deny relator's motion to dismiss the claimant or his estate.
 {¶ 12} For the foregoing reasons, as well as those set forth in the magistrate's decision, the objections are overruled.
 {¶ 13} Following independent review pursuant to Civ.R. 53, we find the magistrate has properly determined the pertinent facts and applied the salient law to them. Accordingly, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained in it. In accordance with the magistrate's decision, we deny the requested writ of mandamus.
Objections overruled;
 writ denied.
French and Travis, JJ., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
The State of Ohio ex rel. :
Grimes Aerospace Co., Inc., :
 Relator, :
 :
 :
v. : No. 04AP-1197
 :
 :
Industrial Commission of Ohio : (REGULAR CALENDAR)
and Wesley Miller, :
 Respondents. :
 MAGISTRATE'S DECISION Rendered on August 24, 2005 Crabbe, Brown Jones, LLP, and John C. Albert, for relator.
Jim Petro, Attorney General, and Lasheyl N. Sowell, for respondent Industrial Commission of Ohio.
 IN MANDAMUS {¶ 14} Relator, Grimes Aerospace Co., Inc., has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which granted permanent total disability ("PTD") compensation to respondent Wesley Miller ("claimant") and ordering the commission to find that claimant is not entitled to that compensation.
Findings of Fact:
 {¶ 15} 1. Claimant contracted an occupational disease in the course of his employment with relator. Claimant's claim was allowed in 2001 for the following conditions: "pneumoconiosis; pulmonary fibrosis."
 {¶ 16} 2. The record shows that claimant had worked for relator for approximately 32 years and during that time he was exposed to silica dust, fumes, and asbestosis. Claimant retired from the workforce in 1984 when he was 61 years of age.
 {¶ 17} 3. On June 24, 2004, claimant filed his application for PTD compensation. At the time, he was 72 years of age, indicated that he had obtained a GED and had specialized training in automobile mechanics and welding, noted that he was able to read, write, and perform basic math, and listed his prior work history as a casting inspector, locator clerk, metal salvage and scrap, assembler, and core maker trainee. Claimant's application was supported by the January 23, 2002 report of Dr. David M. Atwell who opined as follows: "With his underlying lung disease, he would not be able to return to his prior job as an inspector at Unicast. I think that at this time he might be able to do at least a desk job."
 {¶ 18} 4. Claimant was examined by Dr. Harvey A. Popovich on behalf of the commission. In his September 4, 2002 report, Dr. Popovich opined that claimant had reached maximum medical improvement ("MMI"), assessed a 51 percent whole person impairment, noted that claimant could not return to his former position of employment based only on the limitations due to the allowed conditions, and indicated that claimant was capable of performing sustained remunerative activity within the sedentary level of exertion.
 {¶ 19} 5. A records review was performed on behalf of relator by Dr. Paul C. Martin. In his August 26, 2002 report, Dr. Martin opined that claimant could perform sustained remunerative employment of a sedentary nature provided that he not lift greater than ten pounds, sit the majority of time, and avoid prolonged walking or stair climbing activities. Dr. Martin did note that claimant has several other medical conditions currently affecting his overall physical capacity resulting in additional impairment beyond that causally related to the allowed conditions of the claim.
 {¶ 20} 6. An employability assessment report was prepared by Barbara E. Burk and dated October 1, 2002. Ms. Burk identified jobs claimant could perform immediately and jobs which he could perform with appropriate academic remediation or brief skilled training based upon the restrictions imposed by Drs. Popovich, Atwell and Martin. Ms. Burk noted that claimant's age would be a significant barrier to employment, his education was an asset but that his work history was a negative factor towards reemployment.
 {¶ 21} 7. An employability assessment was also prepared by Vincent D. Pellegrino dated October 25, 2002. Mr. Pellegrino opined that claimant's age was a barrier to reemployment, his high school education would enable him to perform semi-skilled and skilled type work activity, and that his work history demonstrates above-average aptitudes of spacial perception and manual dexterity. Mr. Pellegrino listed certain jobs which claimant would be able to perform within the restrictions noted by the doctors.
 {¶ 22} 8. A vocational capacities evaluation was performed by Barbara Gearhart and Teresa Kahler ("Gearhart/Kahler"). Based upon the medical evidence in the file, Gearhart/Kahler concluded that relator is not physically capable of performing any of his former job duties and that, due to his significant physical limitations and his advanced age, relator was unemployable.
 {¶ 23} 9. Claimant's application was heard before a staff hearing officer ("SHO") on March 11, 2003, and resulted in an order granting the requested compensation. The SHO concluded that, based upon the medical reports of Drs. Martin, Popovich and Atwell, claimant could perform remunerative activity at the sedentary employment level. The SHO noted the vocational evidence in the record and concluded that claimant's advanced age, his limitation to sedentary work, and his lack of marketable transferable skills rendered him permanently and totally disabled from all gainful employment. Relator had argued that claimant had voluntarily retired and, as such, was not entitled to PTD compensation. However, the SHO noted that claimant's occupational disease was not diagnosed until March 20, 2000, and that, therefore, claimant could not have voluntarily abandoned the labor market in 1984 due to a condition which was not even diagnosed at the time. Relator also argued that the only obstacle to claimant's reemployment was his age; however, the SHO disagreed and noted as follows:
The employer also contended that the Permanent Total Disability Application should be denied because the sole cause or primary obstacle to reemployment is the injured worker's advanced age pursuant to Ohio Administrative Code 4121-3-34(D)(1)(g). However, this Staff Hearing Officer does not find the "sole cause or primary obstacle" to the injured worker's reemployment to be his advanced age of 79. Clearly, the allowed conditions limit the injured worker from a functional standpoint to sedentary work only. The injured worker appeared at hearing with an oxygen tank. Presumably, the allowed conditions continue to deteriorate. The medical records clearly reveal that the injured worker suffers from shortness of breath due to the allowed pulmonary conditions which make it difficult for this individual to maintain any type of activity during the day. Further, the injured worker performed one job inspecting casting for shipping with this foundry employer for 32 years. When he last worked with this employer he was already 61 years old and generally considered to [be] beyond the age of vocational rehabilitation. Therefore, the consideration of Permanent and Total Disability Compensation is not based solely or even primarily upon the injured worker's advanced age as outlined by the evidence in file.
 {¶ 24} 10. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
 {¶ 25} Relator advances several arguments in support of this mandamus action: (1) the commission should have dismissed claimant's application because the application was not supported by competent credible medical evidence and claimant was permanently and totally disabled; (2) the commission granted PTD compensation based solely or primarily upon claimant's age; (3) the commission abused its discretion by relying upon the vocational assessment of Gearhart/Kahler; (4) the commission made its own medical conclusions and disregarded the medical evidence; (5) claimant had voluntarily abandoned the workforce; (6) the commission abused its discretion by rejecting relator's argument that claimant's nonallowed conditions were the proximate cause of his alleged inability to work; and (7) the estate of Mr. Miller has no legal interest in the outcome of this proceeding. For the reasons that follow, this magistrate rejects relator's arguments and finds that relator is not entitled to a writ of mandamus.
 {¶ 26} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm. (1967),11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State exrel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond Foundry Co. (1987),29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165.
 {¶ 27} The relevant inquiry in a determination of permanent total disability is claimant's ability to do any sustained remunerative employment. State ex rel. Domjancic v. Indus. Comm. (1994),69 Ohio St.3d 693. Generally, in making this determination, the commission must consider not only medical impairments but, also, the claimant's age, education, work record and other relevant nonmedical factors. State ex rel. Stephenson v. Indus. Comm. (1987),31 Ohio St.3d 167. Thus, a claimant's medical capacity to work is not dispositive if the claimant's nonmedical factors foreclose employability. State ex rel. Gay v. Mihm (1994), 68 Ohio St.3d 315. The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. State ex rel.Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203.
 {¶ 28} Relator first argues that the commission abused its discretion when it denied relator's request to dismiss claimant's PTD application due to relator's allegation that claimant's application was not supported by competent credible medical evidence.
 {¶ 29} Ohio Adm. Code 4121-3-34(C)(1) requires that every PTD application
* * * [S]hall be accompanied by medical evidence from a physician * * * that supports an application for permanent and total disability compensation. The medical examination upon which the report is based must be performed within fifteen months prior to the date of filing of the application for permanent and total disability compensation. The medical evidence used to support an application for permanent total disability compensation is to provide an opinion that addresses the claimant's inability to work (for example, the claimant will never be able to return to his former position of employment, or will never return to work) resulting from the allowed conditions in the claim(s). * * * If the application for permanent total disability is filed without the required medical evidence, it shall be dismissed without hearing.
 {¶ 30} Relator seems to argue that claimant was required to submit medical evidence indicating that he was permanently and totally disabled and unable to work. However, that is not what the Ohio Administrative Code provides. The report of Dr. Atwell indicated that, due to his limitations, claimant could not return to his former job and he "might be able to do at least a desk job." As such, Dr. Atwell's report indicates that claimant is restricted to, at best, sedentary work and meets the requirements of the above-cited Ohio Administrative Code provisions. As indicated by the above provision, Dr. Atwell was not required to opine that claimant was permanently and totally disabled. Often times, from a purely physical or psychological point of view, a claimant is able to perform activity at some physical level. Thereafter, it becomes the responsibility of the commission to analyze the nonmedical disability factors and determine whether or not, in spite of the claimant's ability to physically perform at a certain level, they can actually perform some sustained remunerative employment.
 {¶ 31} Relator also contends that it is not clear whether or not Dr. Atwell actually examined claimant within 15 months prior to the date of the filing of the PTD application. The Ohio Administrative Code provision cited above indicates that the medical examination upon which the report is based must be performed within 15 months prior to the date of the filing of the application. While the magistrate agrees that it is not absolutely clear from his report whether or not Dr. Atwell examined claimant within 15 months prior to the issuance of his report, it is clear that Dr. Atwell was a physician treating claimant and that it was only in 2000 that claimant's allowed condition was even recognized. At the time that his condition was recognized by the commission, several medical reports were in evidence indicating that claimant suffered from pneumoconiosis and pulmonary fibrosis. Furthermore, it appears that relator did not challenge this issue in front of the commission; instead, relator's motion requesting that claimant's PTD application be removed from evidentiary consideration, which was filed July 17, 2002, only challenges Dr. Atwell's report because Dr. Atwell did not opine that claimant was permanently and totally disabled and indicated that claimant might be able to at least perform a desk job. Furthermore, in that motion, relator admitted that Dr. Atwell was "claimant's current treating doctor." As such, this argument of relator is rejected.
 {¶ 32} Relator next challenges the commission's order alleging that the commission relied upon claimant's advanced age as the sole or primary obstacle to his reemployment. The magistrate finds that the commission adequately addressed this issue in its order and specifically rejected it. As the magistrate noted in the findings of fact, the commission addressed this issue as follows:
The employer also contended that the Permanent Total Disability Application should be denied because the sole cause or primary obstacle to reemployment is the injured worker's advanced age pursuant to Ohio Administrative Code 4121-3-34(D)(1)(g). However, this Staff Hearing Officer does not find the "sole cause or primary obstacle" to the injured worker's reemployment to be his advanced age of 79. Clearly, the allowed conditions limit the injured worker from a functional standpoint to sedentary work only. The injured worker appeared at hearing with an oxygen tank. Presumably, the allowed conditions continue to deteriorate. The medical records clearly reveal that the injured worker suffers from shortness of breath due to the allowed pulmonary conditions which make it difficult for this individual to maintain any type of activity during the day. Further, the injured worker performed one job inspecting casting for shipping with this foundry employer for 32 years. When he last worked with this employer he was already 61 years old and generally considered to [be] beyond the age of vocational rehabilitation. Therefore, the consideration of Permanent and Total Disability Compensation is not based solely or even primarily upon the injured worker's advanced age as outlined by the evidence in file.
 {¶ 33} As the commission indicated, it was a combination of claimant's restrictions, age, and lack of transferable marketable skills which, in the opinion of the commission, rendered him permanently and totally disabled. This argument of relator is rejected as well.
 {¶ 34} Relator next alleges that the commission abused its discretion by relying upon the Gearhart/Kahler vocational assessment report. Relator contends that the Gearhart/Kahler report fails to mention the report of Dr. Martin and therefore should not be considered. Furthermore, relator alleges that the Gearhart/Kahler report ignores the opinions of Drs. Atwell, Popovich, and Martin that claimant could perform sustained remunerative employment in a sedentary job.
 {¶ 35} In the present case, the commission noted all three employability assessment reports which were submitted: reports by Barbara Burk, Vincent Pellegrino, as well as the Gearhart/Kahler report. Thereafter, the commission conducted its own analysis of the nonmedical vocational factors.
 {¶ 36} It is undisputed that the commission can reject all vocational reports and conduct its own analysis of the nonmedical disability factors. See State ex rel. Jackson v. Indus. Comm. (1997),79 Ohio St.3d 266. In fact, to bind the commission to the conclusions of any rehabilitation report makes the rehabilitation division, and not the commission, the ultimate evaluator of disability contrary to the dictates of Stephenson. See State ex rel. Singleton v. Indus. Comm. (1994),71 Ohio St.3d 117.
 {¶ 37} The fact that the Gearhart/Kahler report indicates that, in their opinion, claimant cannot even perform sedentary work is immaterial inasmuch as the commission conducted its own analysis which this magistrate finds to be more than adequate. Furthermore, questions of credibility and the weight to be given evidence are within the discretion of the commission as fact finder. Teece, supra. As such, it was within the province of the commission to determine the weight and credibility of the Gearhart/Kahler report. In their report, they concluded that claimant's age and significant physical limitations combine to make him unemployable. Again, there is no reason to find the report invalid, and it was within the province of the commission to determine its weight and credibility. As such, this argument of relator fails as well.
 {¶ 38} Relator also contends that the commission abused its discretion by making its own medical conclusions and presumptions and disregarding the medical reports. Relator points to that portion of the commission's order where the SHO noted that claimant appeared at the hearing with an oxygen tank and presumed that his conditions continued to deteriorate.
 {¶ 39} There is nothing improper about a hearing officer noting their observations at hearing. The commission can rely upon testimony rendered by a claimant at hearing and, as such, clearly could make observations as to their physical abilities as well. Furthermore, it is undisputed that claimant's condition would deteriorate. With an occupational disease such as pneumoconiosis, which has a long latency period, a claimant's condition worsens to the point where the diagnosis is made. Thereafter, the disease continues to take its toll on the claimant's health. There is nothing improper about the hearing officer's statement and nothing in the commission's order indicates that the decision to grant PTD compensation was based upon the hearing officer's "medical" conclusion that the claimant's condition would continue to deteriorate. Instead, it is apparent that the SHO considered the allowed conditions, the medical evidence submitted, the vocational evidence in front of the commission, and conducted its own analysis of the nonmedical disability factors and concluded that relator was permanently and totally disabled. This argument of relator fails as well.
 {¶ 40} Relator also contends that the commission abused its discretion by awarding PTD compensation to claimant in spite of the fact that he had voluntarily abandoned his employment when he retired from the workforce in 1984. The Supreme Court of Ohio made it clear in State ex rel.Liposchak v. Indus. Comm. (2000), 90 Ohio St.3d 276, that, due to the long latency period of pneumoconiosis, one cannot tacitly surrender a right that did not exist and could not be foreseen at the time they left the workforce. The principle that a pre-PTD voluntary withdrawal from the job market precludes eligibility for PTD compensation has no application in cases involving long latent occupational diseases that arise after the claimant abandons the job market. The Supreme Court of Ohio has reaffirmed this holding on several occasions, including State ex rel.Reliance Elec. Co. v. Wright (2001), 92 Ohio St.3d 109, and State exrel. Vansuch v. Indus. Comm. (1998), 83 Ohio St.3d 558.
 {¶ 41} Relator essentially asks this court to find that the Supreme Court of Ohio's decision in Liposchak and its progeny is wrong. While the magistrate understands relator's argument that, inasmuch as PTD compensation is designed to compensate an employee for the loss of future wages and that a person who voluntarily retires and chooses not to work again has not lost any future wages, the Supreme Court has had an opportunity to revisit its decision in Liposchak and has chosen not to do so. As such, inasmuch as the duty of this court is to apply the law as it exists today, the Supreme Court has clearly spoken on this issue and relator's argument is rejected.
 {¶ 42} Relator also contends that the commission abused its discretion in granting claimant PTD compensation because it is the claimant's nonallowed conditions which render him unable to work. This magistrate disagrees. The medical reports in front of the commission noted that claimant has other nonallowed medical conditions which affect him. However, there is nothing in those reports to indicate that the doctors relied upon anything other than the allowed conditions in determining that the claimant was capable of performing some sedentary activities. Relator simply wants this court to reweigh the evidence. Inasmuch as those medical reports constitute some evidence upon which the commission could rely, the magistrate finds that relator has not demonstrated that the commission relied upon nonallowed medical conditions in concluding that claimant was permanently and totally disabled. This argument of relator's is rejected as well.
 {¶ 43} Lastly, relator contends that the magistrate should have dismissed claimant as a party inasmuch as it was discovered that the claimant had died during the pendency of this action. The magistrate disagrees with relator's argument. At the time relator filed its motion to dismiss claimant and the claimant's estate as parties, the record was not clear whether or not PTD compensation had been paid up until claimant's death. Clearly, by law, PTD compensation is payable from the date it is granted until the death of the claimant. Because relator did not submit any documentation that PTD compensation had been paid up until the date of claimant's death, this magistrate finds that her order refusing to dismiss claimant and/or claimant's estate as parties was not error. In any event, even if this court determines that claimant and/or claimant's estate should have been dismissed as parties, no prejudice has occurred to relator by including them in this action. No briefs have been filed on behalf of claimant and/or claimant's estate.
 {¶ 44} Based on the foregoing, this magistrate finds that relator has not demonstrated that the commission abused it discretion and this magistrate rejects all of relator's arguments and finds that relator is not entitled to the issuance of a writ of mandamus.